Willie K. JACKSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7552.

Court of Appeals of Alaska.

Aug. 31, 2001.

---

Willie K. Jackson, pro se, Seward, for Appellant.

Timothy W. Terrell, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

Willie K. Jackson appeals the dismissal of his application for post-conviction relief. Jackson advances several reasons why the superior court should not have dismissed his application, but, with one exception, we conclude that none of his reasons is meritorious.

In July 1993, Jackson was convicted of three counts of third-degree misconduct involving a controlled substance.[1] The superi-

___

1. AS 11.71.030(a)(1).

or court sentenced Jackson to 3 years in prison with 18 months suspended. We affirmed Jackson's conviction and the supreme court denied Jackson's petition for hearing.[2] Jackson began 3 years of probation when he was released from prison on August 1, 1994.[3]

In June 1995, Jackson was convicted of fourth-degree misconduct involving a controlled substance for possessing cocaine.[4] The superior court sentenced Jackson to a 2-year presumptive term. That sentence was stayed pending appeal. We affirmed Jackson's conviction and the supreme court denied Jackson's petition for hearing.[5] While the sentence on Jackson's June 1995 conviction was stayed pending appeal, Jackson was convicted of three offenses that occurred in August 1995: another felony count of fourth-degree misconduct involving a controlled substance and two misdemeanor counts of leaving the scene of an accident and driving with a suspended license.[6] Superior Court Judge Richard D. Savell sentenced Jackson to a composite sentence of 3 years, 45 days for these offenses. We affirmed Jackson's conviction but remanded for resentencing on the misdemeanor counts.[7] After resentencing, Jackson's composite sentence remained the same. Jackson appealed again and specifically contested a restitution order. We vacated the restitution order but otherwise affirmed and the supreme court denied Jackson's petition for hearing.[8]

On February 5, 1996, Superior Court Judge pro tem Jane F. Kauvar revoked Jackson's probation for his July 1993 drug convictions and imposed the full 18 months of his suspended time on those offenses. However, Judge Kauvar ordered Jackson to serve 1 year concurrent with, and 6 months consecutive to, the 3-year, 45-day sentence imposed by Judge Savell for Jackson's August 1995 offenses.

Jackson was released on discretionary parole on February 17, 1999. In April 1999, Jackson filed this post-conviction relief application claiming that the Department of Corrections (DOC) had miscalculated his sentence and that he had served more than his required time in prison. After filing his application, Jackson's parole was revoked and he was re-incarcerated on May 11, 1999.

The State moved for summary disposition of Jackson's application, claiming that Jackson had raised no genuine issues of material fact and that his claims failed as a matter of law. On June 24, 1999, Judge Savell dismissed Jackson's application for the reasons advanced in the State's motion. Jackson appeals the trial court's summary dismissal of his application.

Based on DOC's calculations, Jackson would have been released on mandatory parole on June 4, 1999, if he had not been released in February 1999 on discretionary parole, which was later revoked. Jackson argues that DOC improperly calculated his good time and as a result kept him incarcerated past December 27, 1998, the date he should have been released on mandatory parole.

Jackson's claim that DOC miscalculated his good time centers on DOC's treatment of the 18-month sentence that Judge Kauvar imposed in 1996 for Jackson's violation of probation on his 1993 convictions. As we noted above, Judge Kauvar imposed a partially consecutive sentence: 1 year concurrent with and 6 months consecutive to the composite sentence Jackson received for his three August 1995 offenses. Under AS 12.55.025(e), when a defendant is sentenced

2. See *Jackson v. State*, Memorandum Opinion and Judgment No. 3080 (Alaska App., March 1, 1995), *petition for hearing denied*, Case No. S–7027 (Alaska Supreme Court, July 12, 1995).

3. See *Jackson v. State*, 926 P.2d 1180, 1183 (Alaska App.1996).

4. AS 11.71.040(a).

5. See *id.* at 1191, *petition for hearing denied*, Case No. S–7875 (Alaska Supreme Court, December 20, 1996).

6. AS 11.71.040(a)(3)(A); AS 28.35.050(c); AS 28.15.291(a), respectively.

7. See *Jackson v. State*, Memorandum Opinion and Judgment No. 3699 at 19–20 (Alaska App., November 19, 1997).

8. See *Jackson v. State*, Memorandum Opinion and Judgment No. 4207 at 9 (April 19, 2000), *petition for hearing denied*, Case No. S–9682 (Alaska Supreme Court, May 30, 2000).

for a new crime and faces revocation of probation for a previous crime, the sentences must be imposed consecutively.[9] To the extent that Judge Kauvar imposed Jackson's sentence concurrently, that sentence was illegal. However, it is clear that Judge Kauvar intended that Jackson serve 6 months of additional imprisonment for his probation violation.

Under AS 33.20.010, any inmate sentenced to more than 3 days of imprisonment receives good-time credit equal to one-third of that sentence.[10] An inmate such as Jackson, who is serving a composite sentence in excess of 2 years, must be released on mandatory parole after serving that composite sentence minus good time.[11] The computation of the mandatory parole release date is based on the inmate's aggregate sentence; that is, each term of imprisonment is not separately offset with good time.[12]

When DOC calculated Jackson's good-time credit, DOC added the 6 months of consecutive time imposed by Judge Kauvar to his other sentences (the 3–year, 45–day sentence for his August 1995 offenses and the 2–year presumptive sentence for his June 1995 conviction). Because Jackson's 1–year concurrent sentence did not increase the length of his total sentence, DOC ignored that sentence when calculating good time.

Jackson disputes DOC's method of calculating his good time. First, he argues that the general rule articulated in *Wilson v. State*[13] and *Callan v. State*[14] that an inmate's

mandatory parole release date (which is based on accumulated good time) should be derived from the total length of an inmate's term of imprisonment rather than each sentence does not apply in his case because his sentences are not entirely consecutive. Second, he argues that AS 33.20.010 should be interpreted to mandate good time for concurrent sentences. Based on these two premises, he contends that he should have received 6 months good-time credit for the 18–month sentence imposed by Judge Kauvar even though 1 year of that sentence was imposed concurrently. Moreover, he argues that he has no additional time to serve as a result of Judge Kauvar's sentence because his 6 months of good time credit eliminates the need to serve the consecutive 6 months that she imposed.

■ The statute governing computation of good time does not expressly state that good time is computed based on composite sentences. The statute provides that an inmate convicted of "an offense" and sentenced to "a term" of imprisonment is entitled to a deduction of one-third of that term.[15] Viewed in isolation, the statute's use of "a term" might be read to suggest that an inmate must receive good-time credits equal to one-third of the sentence for each offense. When purely consecutive sentences are involved, the result is no different than one-third of an aggregate term of imprisonment. However, the statutes governing mandatory

9. *See Callan v. State*, 904 P.2d 856, 857 & n. 3 (Alaska App.1995); *Jennings v. State*, 713 P.2d 1222, 1223–24 (Alaska App.1986).

10. AS 33.20.010(a), provides in relevant part:
 Computation of good time. (a) Notwithstanding AS 12.55.125(f)(3) and 12.55.125(g)(3), a prisoner convicted of an offense against the state or a political subdivision of the state and sentenced to a term of imprisonment that exceeds three days is entitled to a deduction of one-third of the term of imprisonment rounded off to the nearest day if the prisoner follows the rules of the correctional facility in which the prisoner is confined.

11. *See* AS 33.20.030, which provides in relevant part:
 Discharge. A prisoner shall be released at the expiration of the term of sentence less the time deducted for good conduct.
 AS 33.20.040(a) provides in relevant part:

Released prisoner. (a) Except as provided in (c) of this section, a prisoner released under AS 33.20.030 shall be released on mandatory parole to the custody and jurisdiction of the parole board under AS 33.16, until the expiration of the maximum term to which the prisoner was sentenced, if the term or terms of imprisonment are two years or more.

12. *See Wilson v. State*, 944 P.2d 1191, 1192–93 (Alaska App.1997); *Callan*, 904 P.2d at 857–58.

13. 944 P.2d 1191.

14. 904 P.2d 856.

15. *See* AS 33.20.010(a).

parole and the discharge of inmates make clear that, for purposes of calculating an inmate's release date, good time is not offset against each separate sentence, as Jackson urges, but against the composite sentence. The mandatory parole statutes provide that an inmate whose "term or terms" of imprisonment exceeds two years must be placed on mandatory parole for the term of good-time deductions credited under AS 33.20.[16] The discharge statute provides that a prisoner must be released "at the expiration of the term of sentence less the time deducted for good conduct." [17]

■ Because an inmate is released only after serving all pending sentences, good time must be deducted from the inmate's full term of imprisonment. Read together, these statutes compel the conclusion that an inmate serving more than one sentence receives the benefit of good-time credits and is released on mandatory parole only after serving two-thirds of that aggregate sentence. This was the conclusion reached in *Callan*[18] and *Wilson*,[19] and Jackson has offered no legal authority or policy rationale for distinguishing his case because one of his sentences is partially consecutive.

■ The question remains whether Jackson's 1–year concurrent sentence should be included in the calculation of his good time. This issue was not addressed in *Callan* and *Wilson*, which involved only consecutive sentences.[20] Because AS 33.20.010(a) requires that good time be calculated based on an inmate's "term of imprisonment" rather than an inmate's "sentence"—and because concurrent sentences do not affect the length of an inmate's "term of imprisonment"—the plain language of the statute suggests that only consecutive sentences should be included in the computation of good time.[21]

■ Moreover, Jackson's argument is flawed because it rests on the unstated assertion that a prisoner should receive *separate* good time credit for each concurrent sentence. DOC calculated Jackson's good-time credit by assessing his total time to serve (the 3 years, 45 days imposed by Judge Savell, plus the consecutive 6 months imposed by Judge Kauvar). Jackson would be entitled to an earlier release date only if (1) Judge Kauvar's 18–month sentence was reduced to 12 months to serve because of good-time credit, *and, at the same time* (2) Jackson was additionally awarded more good-time credit for simultaneously serving his other concurrent sentence (the 3–year, 45–day sentence imposed by Judge Savell). Prisoners are entitled to good-time credit equal to one-third of their term of imprisonment, but prisoners whose term of imprisonment comprises multiple concurrent sentences do not earn good-time credit at a multiple rate.

■ Jackson also argues that DOC's interpretation of the good-time statutes violates the constitutional prohibition against double jeopardy and his state and federal rights to due process and equal protection. Because Jackson makes only conclusory assertions and does not cite legal authority or explain how these rights were violated, we conclude that Jackson has waived these claims.[22]

Jackson next argues that the Parole Board was required to discharge him from mandatory parole under AS 33.16.210. That statute provides in relevant part:

> (b) Notwithstanding (a) of this section, the board *may* unconditionally discharge a mandatory parolee before the parolee has completed two years of parole if the parolee is serving a concurrent period of residual probation under AS 33.20.040(c), and the period of residual probation and the period

---

16. *See* AS 33.16.010(a), (c); AS 33.20.040(a).

17. AS 33.20.030.

18. *See* 904 P.2d at 857–58.

19. *See* 944 P.2d at 1192–93.

20. It is worth noting that Callan was ordered to serve a concurrent sentence, which was not included in DOC's computation of his good time.

*See Callan,* 904 P.2d at 856 & n. 1. Callan did not challenge this aspect of his sentence.

21. *See* AS 33.20.010(a), *supra,* note 10.

22. *See Tenala, Ltd. v. Fowler,* 921 P.2d 1114, 1121 n. 10 (Alaska 1996).

of suspended imprisonment each equal or exceed the period of mandatory parole.[23] Jackson argues that this provision should be construed as mandatory because it does not guide the Parole Board in the exercise of its discretion by providing some alternative to discharging a parolee once the conditions outlined in the statute have been met.

■ This argument is without merit. The term "may" denotes "permissive or discretionary authority and not a mandatory duty." [24] As the State points out, the statute provides the Parole Board with two alternatives once the specified conditions are met: it may discharge the parolee or not discharge the parolee. Moreover, administrative regulations direct the Parole Board to consider specific factors in making that determination.[25] If the Parole Board in exercising its discretion exceeds its statutory authority or acts arbitrarily, Jackson's recourse is to seek judicial review of the board's decision.[26] In any event, Jackson has not established that he should have been released on mandatory parole or that he otherwise met the prerequisites of the statute.

■ Next, Jackson argues that DOC made two errors in calculating his prior service credits. First, Jackson argues that three misdemeanor sentences (10 days each) that he served in October and November 1995 should have run concurrently to his felony sentences because the sentencing courts ordered him to "begin serving time now" and because DOC did not have authority to "stop Felony time which had already begun so that its balance would run consecutive to the Misdemeanor time." Jackson has not submitted the sentencing orders from those misdemeanor cases and thus has not provided a record to review his claim that the sentences were imposed concurrently.[27] And while the State concedes that Jackson should have served his misdemeanor sentences after his felony sentences, any error was harmless because the length of his overall term was unchanged.[28]

■ Second, Jackson claims that DOC failed to credit him for 20 days of service on the sentence for his June 1995 conviction.[29] Jackson argues that his presentence report shows that he should have received 25 days credit for time served before sentencing when DOC actually credited him with only 5 days. The State maintains that the time accounting sheet produced by DOC explains their actions. This creates a question of fact that the superior court must resolve. Because the issue cannot be decided without resolving that issue of fact, the superior court erred by granting the State's motion for summary disposition of Jackson's application. Accordingly, we must reverse the superior court's order dismissing the case insofar as it relates to Jackson's claim that he did not receive proper credit for the time served before sentencing.

Jackson next argues that the superior court erred in rejecting his claim that the composite sentence for his August 1995 offenses should have been stayed under Appellate Rule 206(a)(1) because he appealed his convictions to this court and because he was released on discretionary parole while that appeal was pending. But Jackson's basic claim is that DOC did not properly calculate his release date. Appellate Rule 206(a)(1) does not operate to provide any additional credit towards the service of the defendant's sentence. A defendant who is released while

---

23. Emphasis added.

24. *Gerber v. Juneau Bartlett Mem'l Hosp.*, 2 P.3d 74, 76 (Alaska 2000).

25. *See* 22 AAC 20.280(d).

26. *See Interior Alaska Airboat Ass'n, Inc. v. State,* 18 P.3d 686, 689–90 (Alaska 2001).

27. *See Ketchikan Retail Liquor Dealers Ass'n v. State, Alcoholic Beverage Control Bd.,* 602 P.2d 434, 438–39 (Alaska 1979), *modified at* 615 P.2d 1391 (Alaska 1980) (a party's failure to designate a record to support the party's claims justifies a reviewing court in deciding those claims against the party).

28. *See* Alaska R.Crim. P. 47(a) ("Any error ... which does not affect substantial rights shall be disregarded.").

29. *See* AS 12.55.025(c) ("A defendant shall receive credit for time spent in custody pending trial, sentencing, or appeal, if the detention was in connection with the offense for which sentence was imposed.").

an appeal is pending, whether the defendant is released on bail conditions by the court or is released by the Parole Board, does not receive credit towards the service of his sentence whether on bail release or parole release.

 Finally, Jackson argues that the superior court violated Civil Rule 54 by signing the State's proposed order. Civil Rule 54(a) provides that a judgment "shall not contain a recital of pleadings." Jackson's argument fails for two reasons. First, the adoption of a prevailing party's proposed order is permitted by the civil rules. Civil Rule 52(a) requires the superior court "[i]n all actions tried without a jury or with an advisory jury ... [to] find the facts specially and state separately its conclusions of law." However, a trial court may adopt attorney-prepared findings and conclusions "so long as they reflect the court's independent view of the weight of the evidence."[30] Second, while the civil rules require that judgments be set forth on a separate document distinct from findings of fact or conclusions of law, the criminal rules relating to post-conviction relief proceedings do not so require. Criminal Rule 35.1(g) directs that: "The court shall make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented. The order made by the court is a final judgment." Because Rule 35.1(g) applies specifically to post-conviction relief proceedings, it controls the form of judgments in those proceedings over more general civil rules that may be in conflict.[31] We have considered Jackson's arguments about the court's order in light of the civil rules and Criminal Rule 35.1(g) and conclude that the superior court did not violate these procedural rules.

*Conclusion*

The judgment of the superior court dismissing Jackson's claim that he was not properly credited with 20 days credit for time served before sentencing is RE-VERSED. In all other respects, the judgment of the superior court is AFFIRMED.

---

**30.** *Industrial Indem. Co. v. Wick Constr. Co.,* 680 P.2d 1100, 1108 (Alaska 1984); *see also* J.A. Bryant, Jr., Annotation, *Propriety and Effect of Trial Court's Adoption of Findings Prepared by Prevailing Party,* 54 A.L.R.3d 868 (1974) (citing cases in support of this principle).

**31.** *Cf. Waiste v. State,* 808 P.2d 286, 289 (Alaska App.1991).